## CHESAPEAKE & O. R. CO. v. UNITED STATES.

District Court, E. D. Virginia.

Oct. 10, 1932.

Leake & Spicer, of Richmond, Va., for plaintiff.

Alvah H. Martin, Asst. U. S. Dist. Atty., of Norfolk, Va., for defendant.

MEEKINS, District Judge.

The plaintiff, as delivering or terminal carrier, has brought this action to collect

from the defendant certain freight charges on shipment of household furniture and other personal effects of army officers of the United States, changing from official location, by War Department orders, which property included boxes, crates, barrels, and packages of household goods, personal effects, and professional books.

The movement of the several shipments was through western, southern, and official classification territories or carriers, and during the period the following classifications were in effect and applicable:

1. Consolidated Freight Classification, No. 2, F. S. Smith, I.C.C.—O.C. 46.

2. Consolidated Freight Classification, No. 3, F. W. Smith, I.C.C.—O.C. 47.

3. Consolidated Freight Classification, No. 4, F. S. Smith, I.C.C.—O.C. 48.

Each of the classifications contains both an "Emigrant Moveables" rating and a "Household Goods" rating.

It is admitted that, when the shipments were taken, each shipment was given a classification rating of "Household Goods" and the plaintiff files its claim on this basis. The Finance Office of the United States Army and the General Accounting Office of the United States, in accordance with the decisions of the Comptroller General of the United States, dated September 26, 1923, in case of Review 5126, ruled that the classification rating of "Emigrant Moveables" (which provides a lower rate than that on the classification "Household Goods") applied to each of the shipments and there was a settlement made by the government on the basis that the shipments properly came under the classification of "Emigrant Moveables."

The plaintiff has brought this action for a claimed balance of $819.62 which is the difference owing if the "Household Goods" classification applies instead of the classification rating of "Emigrant Moveables."

In the agreed stipulation of facts it is admitted by the government that the payments on bills FC 2944 and FC 3787 were received by the plaintiff under protest, with specific reservation of the right to claim any additional amount found to be due, and that the payments made on bills FC 4963 and FC 6367 were received without such protest or reservation of the right to dispute the amount paid. However, there is nothing in the record to show an "Accord and Satisfaction" nor any consideration for a release of any amount actually due, on the unprotested payments, in the event that the "Household Goods" rating should properly apply, so that the suggestion of this defense in the pleading in the case seems to be without legal merit.

The question submitted, therefore, is, that, taking the statement of agreed facts, or assuming as fact what is clearly set forth in the record, and uncontradicted by pleading, or the stipulation of fact, what is a proper classification, whether "Household Goods" rating or "Emigrant Moveables" rating that should be applied as a matter of law to the shipments in question.

As a premise it may be stated that the fact that the government of the United States is a party defendant, that officers of the United States Army were particular shippers, can have no other bearing on the merits than that it involves a large class of similar cases because courts must apply a like rule to the government to that applied to private individuals. Further, the previous rulings of the Comptroller General of the United States, the Court of Claims, and the Interstate Commerce Commission, while persuasive, are not controlling on the courts of the United States.

The legality or fairness of the classification ratings involved as applicable to "Household Goods" or "Emigrant Moveables" are not called in question. The sole and only question for legal construction is, What classification applies? This question may be intelligently and legally solved, not alone by a reading of the terms or words of the respective classifications made, but by their history and the practical and fundamental reasons that are involved in their respective application to shipments of freight. In these two classifications, namely, "Household Goods" and "Emigrant Moveables" in shipments by carload lots, we have: First, the different minimum shipment that must be paid for under such classification, "Household Goods," with the minimum of 12,000 pounds, and "Emigrant Moveables" with a minimum of 20,000 pounds; second, a difference in rating, viz., the rating of the "Household Goods" classification being in excess of that on the "Emigrant Moveables" classification; third, we have inclusive of many articles of large weight and small value under the classification of "Emigrant Moveables" that can be shipped under the classification of "Household Goods;" and, fourth, we have the history of "Emigrant Moveables" class-

ification to the end that it was originally intended and applied to emigrant shipments, that is to the shipments of the household goods, tools, farming machinery, stock, etc., of emigrant settlers going West, to encourage the settlement of the West, then a substantial interest to the western railroads, and while the classification is now applied (when otherwise applicable) to shipments of those not emigrant strictly so called, still the history of the classification is significant in its proper application.

The difference in the rating between the two classifications of "Household Goods" and "Emigrant Moveables," and the legality of this difference, is based on the principal facts of a difference in value and of weight, and not on the fact of the inclusion in the shipment of some commodity fairly embraced in the terms of both classifications. In this case the inclusion of the "professional books" of the officers with the household furniture and other personal effects seems to have been the controlling factor in the determination of the Comptroller General of the United States. The statement is safely made that it is not often that we find a substantial household without a library, and whether the books it contains are technical or not technical, professional or otherwise, have been from time immemorial considered a part of the household and personal effects of the owner and shipped as such.

Professional books, such as the medical books of a physician, the law books of a lawyer, or the technical books of an army officer, while the "instruments of his respective calling" and given a particular status in the law as exempt from attachment or execution for debt, can never be properly classed with the farming tools of an emigrant farmer and the inclusion of same in a shipment of "Household Goods" and other personal effects of a shipper cannot, in logic or in law, effect the classification based on the substantial differences of value and weight in the ratings. If the professional books of an army officer are not properly to be shipped under the classification rating of "Household Goods" and personal effects, etc., then as to them must be applied the particular commodity rate on each, and, not because they are included in the shipment of "Household Goods," the classification of "Emigrant Moveables" applied.

A simple illustration: Assuming that the rate per hundred pounds under the classification of "Household Goods," etc., is $4 per hundred pounds between certain points of shipment, the minimum to be paid on in carload shipment, under this classification is 12,000 pounds. In computing the freight on the shipment, freight would be charged on 12,000 pounds even if the shipment were less in weight, and, if more, so much per hundred pounds according to the rate.

Assuming that the rate per hundred pounds under the classification "Emigrant Moveables" between the same points is $2 per hundred pounds and the minimum to be paid on is 20,000 pounds, it is obvious that the difference in this rate per hundred pounds must be based on substantial differences. The smaller rate in the classification rating of "Emigrant Moveables" is based on larger railroad shipments, lower value or responsibility in case of damage or loss in the shipment, that is, on a difference in value and weight and not on the character alone of the shipment. Professional books are valuable, frequently of greater value than household furniture, etc., and on the principle involved there is the most persuasive reason why their inclusion in a shipment should not take it out of the classification of "Household Goods" and bring it under the classification rating applicable to "Emigrant Moveables."

If the shipment properly belongs under the classification of "Household Goods," we cannot, in fact or in law, place it under the classification of "Emigrant Moveables." If the two ratings under review are legal, the plaintiff is clearly entitled to the proper and legal classification of the shipment and the rate applicable thereto, and the shipper cannot claim the lower rate unless the shipment comes within the lower rating classification.

For the reasons stated and the distinctions alluded to, the opinion of the Comptroller General of the United States is not persuasive, and it is further not supported by the determination of the Interstate Commerce Commission in the decision referred to, and partly quoted. Blanton Duncan v. Atchison, T. S. F. Railroad Company, 6 I. C. C. 85, opinion by Commissioner Clements.

On page 101 of the reported opinion of Commissioner Clements, supra, it is laid down: "It is also in evidence that 'the class of goods that go West under the term "emigrants' moveables" on the average are of materially lower value * * * and the insurance risk is consequently less.'" It is clearly shown that the difference in rating is based on the difference in value and therefore of responsibility of the carrier.

The opinion of the Comptroller General likewise refers to certain rulings of the United States Court of Claims, where no opinions were filed, and no reasons given, and which are said by him to have been adverse to the claim of the plaintiff in this case.

If there was nothing more in this record than the foregoing statements of fact and law, then upon these facts and upon this law, the court would be compelled to decide this case against the government, but the court is not left dependent on its own viewpoint of law applicable to the matter. The Interstate Commerce Commission of the United States, in the case of Jackson Tariff Bureau et al. v. Illinois Central Railroad Company et al., decided January 31, 1928, reported in volume 139 page 319, of its published decisions, has determined the identical question favorable to the plaintiff in this case. The case immediately supra is the opinion of a tribunal having the most intimate and thorough knowledge of the matter at issue, the opinion being by Commissioners Meyer, Eastman, and Woodlock, and on facts substantially as they appear in this case.

On page 320 of the reported opinion, supra, it is laid down: "Defendants contend that the rates on emigrant moveables apply only when household goods are shipped mixed with one or more of the commodities described in the classification. The commodities other than household goods listed under the tariff description of emigrant moveables are heavy commodities of low value, which are not liable to damage while in transit."

The reasoning applicable to this case, as to the legal meaning of the word "tools," is not the same applicable to a question of the attachment of or execution on the books of a lawyer, doctor, etc. In the latter case the books are classed as "tools or implements of calling" because in the wisdom of the common law it was not deemed expedient to deprive a person of his means of living and thereby diminish his capacity to earn money to settle his debts.

The suggested "Doctrine of Acquiescence" has no proper application in the instant case. There was never any waiver nor acquiescence but e converso a continuous insistence upon the amount claimed. Moreover, this suit, in and of itself, is an answer to the suggestion as to acquiescence. To repeat, there was never any waiver, express or implied, of the amount claimed, never a compromise agreement amounting to an "Accord and Satisfaction," amounting to a "settlement" of the claim of the carrier.

Lord Ellenborough says: "It is impossible to contend that the acceptance of seventeen pounds ten shillings (£17—10 s) is an extinguishment of a debt of fifty pounds (£50). There must be some consideration or relinquishment of the remainder, something collateral to show the possibility of benefit to the party relinquishing his further claim, otherwise the agreement is nudum pactum."

The general law on this subject is well expressed in Ruling Case Law, vol. 1, title "Accord and Satisfaction," § 14, p. 14, and in substance is as so well and completely expressed by Lord Ellenborough.

Since complainant's shipment consisted of household goods, clearly the specific rates published on this commodity are applicable, and decree will be signed for the plaintiff in accord with this opinion.